Lauren Packard (Cal. Bar #317774)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway
Suite 800
Oakland, CA 94612
Phone: 510-844-7100 x303
Fax: 510-844-7150
email: lpackard@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity and*
*Center for Environmental Health*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY <br><br> and <br><br> CENTER FOR ENVIRONMENTAL HEALTH <br><br>　　　Plaintiffs, <br><br> v. <br><br> ANDREW WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency, <br><br>　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. No. <br> ) <br> ) <br> ) **COMPLAINT FOR INJUNCTIVE** <br> ) **AND DECLARATORY RELIEF** <br> ) <br> ) (*Clean Air Act, 42 U.S.C. §§ 7401 et seq*) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**INTRODUCTION**

1. Plaintiffs Center for Biological Diversity and the Center for Environmental Health, [collectively "Environmental Groups"] bring this Clean Air Act citizen suit to compel the United States Environmental Protection Agency to undertake overdue mandatory duties. Specifically, Andrew Wheeler, in his official capacity as Administrator of the United States Environmental Protection Agency ("EPA"), has failed to determine whether the West Central Pinal nonattainment area for the 2006 National Ambient Air Quality Standard ("NAAQS") for particulate matter less than 2.5 microns in diameter ("PM2.5") attained by its attainment date.  In addition, EPA has failed to promulgate a Federal Implementation Plan ("FIP") for Arizona's New Source Review ("NSR") program to correct the deficiencies it found when it partially disapproved Arizona's State Implementation Program ("SIP").

2. Accordingly, Plaintiffs THE CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH bring this action against Defendant ANDREW WHEELER, in his official capacity as EPA Administrator, to compel him to perform his mandatory duties with respect to West Central Pinal PM2.5 NAAQS nonattainment area and Arizona's NSR program.

**JURISDICTION**

3. This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

4. An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 of 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

**NOTICE**

5. On January 3, 2019, Plaintiffs mailed to EPA by certified mail, receipt requested, written notice of intent to sue regarding the violations alleged in this Complaint.  EPA

1    received this notice of intent to sue letter no later than February 4, 2019. More than sixty

2    days have passed since Plaintiffs mailed their "notice of intent to sue" letter.  EPA has not

3    remedied the violations alleged in this Complaint. Therefore, a present and actual

4    controversy exists.

5                                          **VENUE**

6    6. Defendant EPA resides in this judicial district.  This civil action is brought against an

7    officer of the United States acting in his official capacity and a substantial part of the events

8    or omissions giving rise to the claims in this case occurred in the Northern District of

9    California.  The claims in this Complaint concern EPA's failure to perform mandatory

10   duties with regard to Arizona's implementation of the Clean Air Act.  EPA Region 9, which

11   is responsible for Arizona, is headquartered in San Francisco.  Thus several of the events

12   and omissions at issue in this action occurred at EPA's Region 9 headquarters in San

13   Francisco.  In addition, Plaintiff Center for Environmental Health is headquartered in

14   Oakland and Plaintiff Center for Biological Diversity is incorporated in California with its

15   main California office in Oakland.  Accordingly, venue is proper in this Court pursuant to

16   28 U.S.C. § 1391(e).

17                            **INTRADISTRICT ASSIGNMENT**

18   7. A substantial part of the events and omissions giving rise to the claims in this case

19   occurred in the County of San Francisco.  Accordingly, assignment to the San Francisco

20   Division or the Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d).

21                                        **PARTIES**

22   8.         Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3)

23   corporation incorporated in California.  The Center for Biological Diversity has more than

24   69,000 members throughout the United States and the world. The Center for Biological

25   Diversity's mission is to ensure the preservation, protection, and restoration of

26   biodiversity, native species, ecosystems, public lands and waters, and public health

27   through science, policy, and environmental law.  Based on the understanding that the

28   health and vigor of human societies and the integrity and wildness of the natural

Complaint for Declaratory and Injunctive Relief                                          3

1    environment are closely linked, the Center for Biological Diversity is working to secure a

2    future for animals and plants hovering on the brink of extinction, for the ecosystems they

3    need to survive, and for a healthy, livable future for all of us.

4    9.      The Center for Biological Diversity and its members include individuals with

5    varying interests in wildlife species, native plants, and their habitat ranging from

6    scientific, professional, and educational to recreational, aesthetic, moral, and spiritual.

7    Further, the Center for Biological Diversity's members enjoy, on an ongoing basis, the

8    biological, scientific, research, educational, conservation, recreational, and aesthetic

9    values of the regions inhabited by these species, including the regions at issue in this

10   action.  The Center for Biological Diversity's members observe and study native species

11   and their habitat, and derive professional, scientific, educational, recreational, aesthetic,

12   inspirational, and other benefits from these activities and have an interest in preserving the

13   possibility of such activities in the future.  The Center for Biological Diversity and its

14   members have participated in efforts to protect and preserve natural areas, including the

15   habitat essential to the continued survival of native species, and to address threats to the

16   continued existence of these species, including the threats posed by air pollution and other

17   contaminants.

18   10.     Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland,

19   California based non-profit organization that helps protect the public from toxic chemicals

20   and promotes business products and practices that are safe for public health and the

21   environment.  The Center for Environmental Health works in pursuit of a world in which

22   all people live, work, learn, and play in healthy environments.

23   11.     Plaintiffs' members live, work, recreate, travel, and engage in other activities

24   throughout the areas at issue in this complaint and will continue to do so on a regular

25   basis.  Pollution in the affected areas threatens and damages, and will continue to threaten

26   and damage, the health and welfare of Plaintiffs' members as well as their ability to

27   engage in and enjoy their other activities.  Pollution diminishes Plaintiffs' members'

28   ability to enjoy the aesthetic qualities and recreational opportunities of the affected area.

Complaint for Declaratory and Injunctive Relief                                    4

1    12.    EPA's failure to timely perform the mandatory duties described herein also

2    adversely affects Plaintiffs, as well as their members, by depriving them of procedural

3    protection and opportunities, as well as information that they are entitled to under the

4    Clean Air Act.  The failure of EPA to perform these mandatory duties also creates

5    uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

6    13.    The above injuries will continue until the Court grants the relief requested herein.

7    14.    Defendant ANDREW WHEELER is the Administrator of the EPA.  In that role

8    Administrator Wheeler has been charged by Congress with the duty to administer the

9    Clean Air Act, including the mandatory duties at issue in this case.  Administrator

10   Wheeler is also charged with overseeing all EPA regional offices including EPA Region

11   9, which has authority over Arizona and is headquartered in San Francisco.

12                        **LEGAL BACKGROUND AND FACTS**

13   15.    Congress enacted the Clean Air Act to "speed up, expand, and intensify the war

14   against air pollution in the United States with a view to assuring that the air we breathe

15   throughout the Nation is wholesome once again."  H.R.Rep. No. 1146, 91st Cong., 2d

16   Sess. 1,1, 1970 U.S.Code Cong. & Admin. News 5356, 5356.  To promote this, the Act

17   requires EPA to set National Ambient Air Quality Standards for certain pollutants,

18   including PM2.5.  National Ambient Air Quality Standards establish maximum allowable

19   concentrations in the air of these pollutants.

20   16.    Each National Ambient Air Quality Standard is supposed to be stringent enough

21   to protect public health and welfare.  Effects on welfare include, but are not limited to,

22   effects on soils, water, vegetation, manmade materials, wildlife, visibility (*i.e.*, haze),

23   climate, damage to property, economic impacts and effects on personal comfort and well-

24   being.

25   17.    In 2006, EPA strengthened the 24-hour PM2.5 National Ambient Air Quality

26   Standard from 65 micrograms per cubic meter to 35 micrograms per cubic meter. 71

27   Fed.Reg. 61,144 (Oct. 17, 2006).

28

Complaint for Declaratory and Injunctive Relief                                    5

1    18.    After EPA promulgates a National Ambient Air Quality Standard, the Clean Air

2    Act requires that EPA designate each area of the country as either a clean air area for that

3    standard, which is known as "attainment" in Clean Air Act jargon, or a dirty air area,

4    which is known as "nonattainment" in Clean Air Act jargon.  See 42 U.S.C. § 7407(d).

5    19.    On March 7, 2011 EPA designated West Central Pinal, Arizona as a moderate

6    nonattainment area. 40 C.F.R. § 81.303.  Therefore, the area has an attainment date of no

7    later than December 31, 2017.  81 Fed.Reg. 91,088. 91,091, fn. 7 (Dec. 16, 2016); 42

8    U.S.C. § 7513(c)(1).  Therefore, EPA has a mandatory duty to determine if the West

9    Central Pinal nonattainment area attained by its attainment date and publish notice of

10   such a finding by no later than June 30, 2018.  42 U.S.C. §§ 7509(c)(1) & (2), 7513(b)(2).

11   EPA has failed to perform this mandatory duty.

12   20.    Under the Clean Air Act, each state is required to submit state implementation

13   plans to ensure that each National Ambient Air Quality Standard will be achieved,

14   maintained, and enforced.  Without such plans, the public is not afforded full protection

15   against the harmful impacts of air pollution.

16   21.    If a state implementation plan submittal is inadequate or inconsistent with the

17   Clean Air Act, EPA must disapprove it.  42 U.S.C. § 7410(k)(3).  If, after two years, the

18   state has failed to correct the deficiencies in a disapproved state implementation plan

19   submittal, EPA must promulgate a federal implementation plan.  42 U.S.C. § 7410(c)(1).

20   22.    On November 2, 2015, EPA found that Arizona's state implementation plan

21   submittal did not comply in part with the Clean Air Act.  80 Fed. Reg. 67,319 (Nov. 2,

22   2015). EPA issued a limited approval and limited disapproval, which was effective

23   December 2, 2015. *Id.*  Therefore, EPA has a mandatory duty to promulgate a federal

24   implementation plan by December 2, 2017 for the parts of the Arizona submittal subject

25   to EPA's limited disapproval.  42 U.S.C. § 7410(c)(1).

26   23.    Arizona has failed to correct every deficiency in its state implementation plan.

27   EPA did approve certain provisions into Arizona's state implementation plan to address

28   some of the deficiencies which were the basis of the November 2, 2015 limited

disapproval.  83 Fed. Reg. 19,631 (May 4, 2018).  However, EPA's May 4, 2018 action did not address "all of the outstanding limited disapproval issues" related to Arizona's state implementation plan. 82 Fed. Reg. 25,213 (June 1, 2017).  As a result, many deficiencies persist.

24.    EPA's Technical Support Document to the May 4, 2018 action "provides a summary of the remaining limited disapproval issues." *Id.*  The Technical Support Document, EPA's Notice of Proposed Rulemaking: Air Plan Approval; Arizona; Stationary Source; New Source Review, May 2017, EPA-R09-OAR-2017-0255-0005, Document C-1 at 22-23, provides the list of items that Arizona Department of Environmental Quality ("ADEQ") failed to correct from the November 2, 2015 limited disapproval.  EPA must promulgate a federal implementation plan that addresses each of these disapprovals. This list includes:

TABLE 1

| Federal Regulation | Arizona's Rule |
|---|---|
| 40 CFR 51.160(a) and (b) | ADEQ rules do not ensure review of NAAQS in neighboring areas outside ADEQ permitting jurisdiction |
| 40 CFR 51.160(a) and (b) | Add reference to "or maintenance" of a standard |
| 40 CFR 51.160(b)(1) | Rule missing requirement to ensure sources must comply with all applicable portions of control strategy, similar to language in other portion of rules, e.g. R18-2-306(A)(2). |
| 40 CFR 51.160(c) | R18-2-302.01 does not fully meet requirement to submit necessary information for ADEQ to review source. In requiring sources to provide potential emissions the rules reference procedures for determining "actual" emissions and the referenced rule is not in the SIP and has not been submitted for SIP-approval. |
| 40 CFR 51.160(c)(1) | Rules allow some emissions units to be exempt from being included in applications for NSR purposes |
| 40 CFR 51.160(d) | Registration rule missing provision that approval does not affect responsibility of owner/operator to comply with other requirements |
| 40 CFR 51.160(f)(1) | Sources subject to registration program missing requirement to use Appendix W, when applicable |
| 40 CFR 51.160(e) | Submittal did not include a sufficient basis for the program's minor NSR thresholds in nonattainment areas, must provide additional analysis or revise thresholds, as needed. |

Complaint for Declaratory and Injunctive Relief                                                    7

| 40 CFR 51.160(e) | Submittal did not include basis for exemptions of certain agricultural sources and fuel burning equipment. See our TSD for the 2015 NSR action on page 27 for four specific issues to be addressed. |
|---|---|
| 40 CFR 51.160(e) | Submittal did not include basis for PM2.5 permitting exemption threshold |
| 40 CFR 51.161(a) | Submittal did not require public notice in all instances for permitting program. Federal rules do not allow for exemptions - including for disapprovals. Public notice is required for all sources defined under 40 CFR 51.160(e); clarification of the public notice procedures in R18-2-330 that apply to registrations is necessary; and program must require public notice for permit disapproval actions |
| 40 CFR 51.161(a) | Elective limits for registrations need additional requirements to ensure enforceability, including technically accurate limit and the portion of the source subject to the limit, the time period over which the limit applies, and compilation of daily records if limit is not on a daily basis |
| 40 CFR 51.161(d) | The registration portion of ADEQ's program needs to require notices to specific parties |
| 40 CFR 51.163 | Submittal contained references to administrative procedures not included in SIP submittal (or existing SIP) |

References to increment, as related to the PSD program. ADEQ corrected this issue in the rules associated with the April 2017 NSR submittal. However, there remain [] references that need to be submitted for rules R18-2-319 and 320.

25.    Accordingly, EPA has a mandatory duty to promulgate a federal implementation plan for Arizona. 42 U.S.C. §§ 7410(c)(1).

**CLAIMS FOR RELIEF**

**CLAIM ONE**

**(Failure to bump up the West Central Pinal 2006 PM2.5 NAAQS nonattainment area)**

26.    Plaintiffs incorporates by reference all paragraphs listed above.

27.    Moderate 2006 PM2.5 nonattainment areas have an attainment date of December 31, 2017.  Therefore, EPA has a mandatory duty to by no later than June 30, 2018.  42 U.S.C. §§ 7509(c)(2),  7513(b)(2).

Complaint for Declaratory and Injunctive Relief                                             8

1    28.      West Central Pinal is a moderate nonattainment area for the 2006 PM2.5

2    NAAQS.

3    29.      It is after June 30, 2018.

4    30.      EPA has not determined if the West Central Pinal moderate 2006 PM2.5 NAAQS

5    nonattainment area has attained by its attainment date and EPA has not published notice of

6    such a determination.

7    31.      Therefore, EPA is in violation of its mandatory duty 42 U.S.C. §§ 7509(c)(2) and

8    7513(b)(2) with regard to the West Central Pinal moderate 2006 PM2.5 NAAQS

9    nonattainment area.

10                              **CLAIM TWO**

11    **(Failure to promulgate a FIP for Arizona's New Source Review program)**

12    32.      Plaintiffs incorporate by reference all paragraphs listed above.

13    33.      EPA has a mandatory duty to promulgate a Federal Implementation Plan (FIP) no

14    later than two years after disapproving a SIP submittal.  42 U.S.C. § 7410(c)(1).

15    34.      EPA issued a limited approval and limited disapproval of rules for the issuance of

16    New Source Review permits for stationary sources of air pollution in Arizona. 80 Fed. Reg.

17    67,319 (Nov. 2, 2015).  This rule was effective December 2, 2015.  *Id.*

18    35.      Therefore, EPA's FIP was due no later than December 2, 2017.

19    36.      EPA has not promulgated a FIP for the items listed in Table 1.  Nor has EPA

20    approved a SIP addressing the items listed in Table 1.  Thus is in violation of its mandatory

21    duty.

22

23                         **REQUEST FOR RELIEF**

24        WHEREFORE, Plaintiffs respectfully request that the Court:

25    A.    Declare that the Administrator is in violation of the Clean Air Act with regard to his

26          failure to perform each mandatory duty listed above;

27    B.    Issue a mandatory injunction requiring the Administrator to perform his mandatory duties

28          by certain dates;

Complaint for Declaratory and Injunctive Relief                                    9

1    C.    Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's

2          order;

3    D.    Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees;

4          and

5    E.    Grant such further relief as the Court deems just and proper.

6

7                                        Respectfully submitted,

8

9    Dated: March 26, 2019              /s/Lauren Packard

10                                       Lauren Packard (Cal. Bar.  #317774)
                                         CENTER FOR BIOLOGICAL DIVERSITY
11                                       1212 Broadway
                                         Suite 800
12                                       Oakland, CA 94612
                                         Phone: 510-844-7100 x303
13                                       Fax: 510-844-7150
                                         email: lpackard@biologicaldiversity.org
14

15                                       *Attorney for Plaintiffs Center for Biological
                                         Diversity and Center for Environmental Health*
16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Declaratory and Injunctive Relief                                    10

**CERTIFICATE OF SERVICE**

       I hereby certify that I served copies of the foregoing Complaint and Summons on the following parties by certified mail pursuant to Federal Rules of Civil Procedure Rule 4 (i)(1)(A)(ii) and (i)(2):

Andrew Wheeler, Administrator
U.S. Environmental Protection Agency HQ
1200 Pennsylvania Avenue, N.W.
Mail Code 1101A
Washington, DC 20460

U.S. Environmental Protection Agency HQ
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

William Barr
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Civil Process Clerk
United States Attorney
Northern District of California
Federal Courthouse
450 Golden Gate
San Francisco, CA  94102

Dated: March 26, 2019                    _/s/_ Andrea Weber

Complaint for Declaratory and Injunctive Relief                    11